**FIRST STATE BANK OF WAYNE COUNTY (Formerly City and County Bank of Wayne County), Petitioner,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.**

No. 84–356.

United States Court of Appeals, Sixth Circuit.

Argued July 15, 1985.

Decided Aug. 15, 1985.

---

J. Montjoy Trimble, argued, Kevin G. Henry, Lexington, Ky., for petitioner.

John C. Deal, Regional Counsel, Federal Deposit Ins. Co., Columbus, Ohio, Arthur L. Beamon, Asst. Gen. Counsel, Hoyle L. Robinson, Secretary, Federal Deposit Ins. Co., Thomas A. Schulz, argued, Washington, D.C., for respondent.

Before MARTIN, CONTIE and WELL-FORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

First State Bank of Wayne County petitions for review of a cease and desist order issued against it by the Federal Deposit Insurance Corporation.

In 1982 the Bank, which is located in Monticello, Kentucky, began making loans to borrowers outside the Bank's trade area. Most of these borrowers, among whom were Jacob F. Butcher and C.H. Butcher, Jr., were located in Knoxville, Tennessee. On June 8, 1983, the FDIC issued a Notice of Charges and of Hearing against the Bank, alleging that the Bank had engaged in unsafe or unsound banking practices. Among these unsafe or unsound practices were: extending unsecured credit without first obtaining adequate financial information; extending credit that was not adequately secured; failing to establish and enforce programs for the repayment of loans; extending secured credit without obtaining complete supporting documentation; failing to provide adequate reserves for loan losses; and operating with an inadequate level of capital for its assets.

A hearing was held before an administrative law judge who found, *inter alia*, that an FDIC examination of the Bank as of the close of business on January 31, 1983, disclosed that $300,000 of the Bank's loan portfolio was subject to "special mention" and $4,676,000 was classified "substandard." Of these loans, $4,449,000 represent-ed credit extended to borrowers in Knoxville. Of the total of the Bank's out-of-state loans, more than 68% were subject to "substandard," "doubtful," or "loss" classification by the FDIC examiner. While the Bank had expensed only $8,000 for loan losses in the first month of 1983, it expensed $2,519,000 in the next five months.

The administrative law judge issued a proposed cease and desist order, which was adopted in relevant part by the Board of Directors of the FDIC. The order requires the Bank to cease and desist from, *inter alia*, engaging in those unsafe and unsound practices mentioned previously. The order also requires the Bank to "eliminate from its books, by charge-off or otherwise, all assets classified 'loss' by the FDIC . . . ," to reduce below $2,000,000 the assets adversely classified but not classified "loss," and to "adopt procedures to assure future compliance with all applicable law, rules and regulations."

The Bank's primary argument on appeal is that the FDIC cannot order it to cease and desist from engaging in the unsound banking practices because the Bank has voluntarily ceased those practices. On review of a cease and desist order entered by the FDIC, our task is to determine whether the remedy ordered is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see* 12 U.S.C. § 1818(h)(2).

We agree with the administrative law judge that, assuming the Bank has improved its loan policy, the facts of this case warrant the entry of a cease and desist order to prevent future abuses. The administrative law judge concluded:

> The facts of this case support the issuance of a cease and desist order. Such an order is an appropriate instrument to deter and prevent future abuses, to correct conditions which have resulted from the unsafe and unsound practices and violations, and to protect the shareholders of the Bank and insure their security in the future. The flagrant and numerous abuses and violations in this case alone would justify the issuance of an

order to insure their non-occurrence in the future. Moreover, several conditions caused by the abuses and violations are still plaguing the Bank, such as the continued presence of several of the adversely classified loans on the Bank's books, and an appropriate order should correct such conditions. It is also significant to recognize that this is not a case where the Bank voluntarily ceased the complained of practices; rather, the cessation of the activities were directly related to the examination undertaken by the FDIC and that agency's actions.

The FDIC's decision is supported by the statutory language of 12 U.S.C. § 1818(b)(1), from which the agency draws its authority to issue cease and desist orders:

> [I]f upon the record made at any such hearing, the agency shall find that any violation or unsafe or unsound practice specified in the notice of charges *has been established,* the agency may issue ... an order to cease and desist from any such violation or practice.

*Id.* (emphasis added). Moreover, the courts have held that voluntary cessation of a prohibited practice is not sufficient to prevent issuance of a cease and desist order under section 1818(b)(1). *See First National Bank of Bellaire v. Comptroller of the Currency,* 697 F.2d 674, 681, 682, 683 (5th Cir.1983); *see also Citizens State Bank of Marshfield, Missouri v. F.D.I.C.,* 751 F.2d 209, 215 (8th Cir.1984); *del Junco v. Conover,* 682 F.2d 1338, 1340 (9th Cir. 1982), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983). With respect to an agency with injunctive authority quite similar to that possessed by the FDIC, this Court has stated: "Where an illegal trade practice is once proved against an enterprise, and is capable of being perpetuated or resumed, it may be presumed to have been continued, and an order may issue to prevent it, even upon a showing that it has been discontinued or abandoned." *P.F. Collier & Son Corp. v. Federal Trade Commission,* 427 F.2d 261, 275 (6th Cir.), *cert. denied,* 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 186 (1970); *see also Zale Corp.*

*and Corrigan-Republic, Inc. v. Federal Trade Commission,* 473 F.2d 1317, 1320 (5th Cir.1973). *See generally Hecht Co. v. Bowles,* 321 U.S. 321, 327, 64 S.Ct. 587, 590, 88 L.Ed. 754 (1944) ("[T]he cessation of violations, whether before or after the institution of a suit by the [agency], is no bar to the issuance of an injunction...."). In light of these principles, the Bank's challenge to the cease and desist order is without merit.

The FDIC's decision and final order to cease and desist are affirmed.